The STATE of Ohio, Appellee,

v.

JACKSON, Appellant.

[Cite as *State v. Jackson*, 190 Ohio App.3d 319, 2010-Ohio-5054.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 2009–T–0050.

Decided Oct. 15, 2010.

Dennis Watkins, Trumbull County Prosecuting Attorney, and LuWayne Annos, Assistant Prosecuting Attorney, for appellee.

Timothy Young, Ohio Public Defender, and Randall L. Porter, Assistant Public Defender; and John P. Parker, for appellant.

COLLEEN MARY O'TOOLE, Judge.

{¶ 1} Appellant, Nathaniel Jackson, appeals from the May 4, 2009 judgment entry of the Trumbull County Court of Common Pleas, denying his motion for new trial and/or sentencing and denying as moot his motion to disqualify the prosecutor's office.

{¶ 2} The following procedural history and factual background were taken from a prior appeal by appellant with this court, *State v. Jackson*, 11th Dist. No. 2008–T–0024, 2010-Ohio-1270, 2010 WL 1176516.

{¶ 3} Appellant was charged with various crimes, including aggravated murder, for the shooting death of Robert Fingerhut. At the time of his death in 2001, Fingerhut was residing with his former wife, Donna Roberts. Roberts was also charged with murder for her role in Fingerhut's death. During the months prior to the incident, appellant and Roberts exchanged letters while he was serving a prison term for an unrelated offense. In the letters, Roberts and appellant discussed a plan for appellant to murder Fingerhut so that Roberts could collect the proceeds from Fingerhut's life-insurance policies.

{¶ 4} In November 2002, appellant was found guilty of two counts of aggravated murder, one count of aggravated burglary, and one count of aggravated robbery. Under both of the aggravated-murder counts, the jury recommended the death penalty. After independently weighing the aggravating circumstances and the mitigating facts, the trial court concluded that the death penalty was appropriate. In addition, the trial court imposed separate sentences on the charges of aggravated burglary, aggravated robbery, and the merged firearm specifications. In January 2003, appellant filed a direct appeal from his conviction and sentence to the Supreme Court of Ohio, which affirmed appellant's convictions and the imposition of the death penalty. *State v. Jackson*, 107 Ohio St.3d 300, 2006-Ohio-1, 839 N.E.2d 362.

{¶ 5} In 2004, appellant filed his original petition for postconviction relief under R.C. 2953.21. Thereafter, appellant submitted an amended petition for postconviction relief. Under the amended petition, he asserted 15 separate claims for relief. In the majority of those claims, appellant argued that he had been denied effective assistance of trial counsel during the penalty phase of his trial. Four of appellant's remaining claims raised issues of possible discrimination in the manner in which the grand-jury proceedings and the petit trial had been conducted. Finally, appellant also challenged the constitutionality of Ohio's execution procedure and the statutory procedure for postconviction relief.

{¶ 6} In responding to appellant's petition, appellee, the state of Ohio, moved to dismiss each of the claims without a hearing on the basis that appellant had not made a prima facie showing that his constitutional rights were violated during his trial. In June 2004, the trial court rendered a 33–page judgment entry in which it dismissed each of the claims raised by appellant. As to all of the claims, the trial court held that appellant had failed to establish substantive grounds to warrant postconviction relief. Also, the trial court held that many of the claims were barred under the doctrine of res judicata because the issues either were, or could have been, raised in his direct appeal from his conviction.

{¶ 7} Appellant appealed the trial court's judgment entry denying his petition for postconviction relief to this court, in which we affirmed the judgment of the trial court. *State v. Jackson*, 11th Dist. No. 2004–T–0089, 2006-Ohio-2651, 2006 WL 1459757. Appellant appealed this court's judgment to the Supreme Court of Ohio, which declined jurisdiction. *State v. Jackson*, 111 Ohio St.3d 1469, 2006-Ohio-5625, 855 N.E.2d 1258.

{¶ 8} On August 2, 2006, the Supreme Court of Ohio released its decision in Roberts's direct appeal. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168. The trial court in the instant matter presided over the underlying trials of both appellant and Roberts. Between the penalty-phase hearing of Roberts's trial and the sentencing hearing, the trial court engaged in ex parte

communications with an assistant county prosecutor about the sentencing opinion in Roberts's case. Id. at ¶ 155. The trial court used the assistant prosecutor to draft the sentencing entry but failed to include the defense counsel in the process. Id. In *Roberts*, the Supreme Court of Ohio vacated the death sentence and remanded the case with instructions for the trial court to personally review and evaluate the appropriateness of the death penalty. Id. at ¶ 164. The Supreme Court also observed that the ex parte collaboration between the trial court and the prosecution to prepare the court's sentencing opinion was "wholly inconsistent" with the ethical constraints of Canon 3(B)(7) of the Code of Judicial Conduct and DR 7–110(B). Id. at ¶ 161.

{¶ 9} Presumably based on the *Roberts* decision, appellant filed a Civ.R. 60(B) motion for relief from the trial court's judgment entry denying his petition for postconviction relief. The state filed an answer, arguing that the motion lacked merit and should be denied. In response, appellant filed a reply brief in support of his motion for relief from judgment.

{¶ 10} In October 2006, attorney Randall L. Porter, counsel for appellant, filed an application and affidavit seeking the disqualification of the trial court in the instant matter, citing a statement by the trial court at a hearing in *Roberts* that it had similarly relied on the prosecuting attorney to prepare paperwork for it in other criminal cases. See *In re Disqualification of Stuard*, 113 Ohio St.3d 1236, 2006-Ohio-7233, 863 N.E.2d 636, ¶ 1, 3. The trial court responded to the affidavit, acknowledging that it held similar ex parte communications with the prosecuting attorney's office in both *Roberts* and *Jackson* before sentencing each of them to death. Id. at ¶ 4. Upon consideration, the Chief Justice declined to disqualify the trial court from further participation in this matter. Id. at ¶ 10.

{¶ 11} The trial court denied appellant's Civ.R. 60(B) motion. It was from that judgment that appellant filed an appeal with this court, case No. 2008–T–0024, asserting that the trial court erred when it denied his motion for relief from judgment and an evidentiary hearing. This court found no error and affirmed the judgment of the trial court on March 26, 2010. *State v. Jackson*, 11th Dist. No. 2008–T–0024, 2010-Ohio-1270, 2010 WL 1176516 (O'Toole, J., dissenting).[1]

---

1. In that opinion, this court stressed that the appeal did "not deal with the trial court's presumed use of the prosecutor to assist it in preparing the underlying *sentencing* entry" but rather concerned "the trial court's use of the procedure when drafting the judgment entry denying Jackson's motion for postconviction relief. In *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, the Supreme Court of Ohio found error in the trial court's sentencing entry due to the fact [that] the prosecution assisted in the drafting of the document. Id. at ¶ 153–164. One of the court's significant concerns was the fact that the resulting judgment entry did not comply with R.C. 2929.03(F), which requires in a *death-sentence opinion* the trial court to state its findings in support of the death sentence. Id. at ¶ 156 & 160. Since the underlying judgment entry in this matter was the postconviction entry, the

{¶ 12} While that appeal was pending, on February 29, 2008, appellant filed a motion for new trial and/or sentencing. The state filed a memorandum in opposition on April 10, 2008.

{¶ 13} On May 12, 2008, appellant filed a second application with the Supreme Court of Ohio to disqualify Judge Stuard, which was denied by the Chief Justice on August 25, 2008.

{¶ 14} Pursuant to its May 4, 2009 judgment entry, the trial court denied appellant's motion for new trial and/or sentencing and denied as moot appellant's motion to disqualify the prosecutor's office.[2] It is from that judgment that appellant filed the present appeal, asserting the following assignments of error for our review:[3]

{¶ 15} "[1.] The trial court erred when it overruled Mr. Jackson's motion for a new sentencing hearing.

{¶ 16} "[2.] The trial court erred when it overruled Mr. Jackson's motions for a new trial and sentencing hearing without conducting an evidentiary hearing."

{¶ 17} In his first assignment of error, appellant argues that the trial court erred by overruling his motion for a new sentencing hearing. We agree.

{¶ 18} In *Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, at ¶ 156–164, the Supreme Court of Ohio stated the following:

{¶ 19} "R.C. 2929.03 governs the imposition of sentences for aggravated murder. R.C. 2929.03(F) clearly contemplates that the trial court itself will draft the death-sentence opinion: *'The court* (* * *) when it imposes sentence of death, *shall state* in a separate opinion *its* specific findings as to the existence of any of the mitigating factors (* * *), the aggravating circumstances the offender was found guilty of committing, and the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors (* * *).' (Emphasis added.)

{¶ 20} "* * *

{¶ 21} "* * *

---

Supreme Court's concerns with R.C. 2929.03(F) do not apply." *Jackson,* 2010-Ohio-1270, 2010 WL 1176516, at ¶ 35. (Emphasis sic.)

2. Appellant is not appealing the aspect of the trial court's entry that denied as moot his motion to disqualify the prosecutor's office.

3. The state filed a motion to dismiss the appeal for lack of jurisdiction. However, in this court's May 13, 2010 judgment entry, we overruled the state's motion, holding that jurisdiction had been properly invoked under Section 3(B)(2), Article IV of the Ohio Constitution.

{¶ 22} "In this case, our confidence in the trial court's sentencing opinion is undermined by the fact that the trial judge directly involved the prosecutor in preparing the sentencing opinion and did so on an ex parte basis. The trial judge is charged by statute with the sole responsibility of personally preparing the opinion setting forth the assessment and weight of the evidence, the aggravating circumstances of the murder, and any relevant mitigating factors prior to determining what penalty should be imposed. The fact that the trial judge provided his notes to the prosecutor to guide the prosecutor in drafting the sentencing opinion does not change the result. The various drafts of the opinion that ultimately imposed death on Roberts involved the assistance of the prosecutor.

{¶ 23} "The trial court's delegation of any degree of responsibility in this sentencing opinion does not comply with R.C. 2929.03(F). Nor does it comport with our firm belief that the consideration and imposition of death are the most solemn of all the duties that are imposed on a judge, as Ohio courts have also recognized. * * * The judge alone serves as the final arbiter of justice in his courtroom, and he must discharge that austere duty in isolation. The scales of justice may not be weighted even slightly by one with an interest in the ultimate outcome. Given the prosecutor's direct role in the preparation of the sentencing opinion, we cannot conclude that the proper process was followed here.

{¶ 24} "That conclusion is compelled particularly in light of the trial court's ex parte communications about sentencing with the prosecutor in preparing the sentencing opinion. The Code of Judicial Conduct, Canon 3(B)(7) specifies, 'A judge shall not initiate, receive, permit, or consider communications made to the judge outside the presence of the parties or their representatives concerning a pending or impending proceeding (* * *).' Both the trial judge and the prosecutor should have known that any ex parte assistance in the preparation of the court's sentencing opinion was wholly inconsistent with these vital ethical constraints. See Disciplinary Rule 7–110(B)(2) and (3).

{¶ 25} "The trial court's consultation with the prosecutor, particularly when undertaken without the knowledge or participation of defense counsel, can neither be ignored nor found to be harmless error. Cf. *Gardner v. Florida* (1977), 430 U.S. 349, 362, 97 S.Ct. 1197, 51 L.Ed.2d 393, * * *. * * * We cannot cure the deficiencies in the preparation of the sentencing opinion by our own independent assessment.

{¶ 26} "The trial court's decision to use the prosecutor in preparing the sentencing opinion constitutes a grievous violation of the statutory deliberative process. It is so severe a violation that independent reweighing cannot serve as an adequate remedy. See *State v. Green* [(2000)], 90 Ohio St.3d [352,] at 363–364, 738 N.E.2d 1208, * * *. We find that we must vacate the sentence because of

the critical constitutional interests and notions of justice that are implicated by the prosecutor's participation in drafting the sentencing opinion.

{¶ 27} "We accordingly sustain Roberts's claim of error in the trial judge's use of the prosecutor to assist directly in the preparation of the sentencing opinion. Accordingly, we vacate the sentence and remand to the trial court for resentencing * * *." (Emphasis sic.)

{¶ 28} In the case at bar, the state maintains that we should follow *State v. Davie*, 11th Dist. No. 2007–T–0069, 2007-Ohio-6940, 2007 WL 4485845, and affirm the judgment of the trial court. The state's reliance on *Davie* with respect to the case sub judice, however, is misplaced. In *Davie*, the appellant, relying on *Roberts*, argued that the trial court erred in overruling his motion for a new sentencing hearing. Id. at ¶ 6. The appellant assumed that the trial court used the prosecutor to draft the sentencing entry. Id. at ¶ 13. However, the trial judge in *Davie* drafted the sentencing entry in its entirety and the prosecutor played no role whatsoever. Id. at ¶ 17. This court, in affirming the judgment of the trial court, held that the fact pattern in *Davie* was factually distinguishable from *Roberts*. Id. at ¶ 18.

{¶ 29} In the case at bar, however, the fact pattern is factually the same as that in *Roberts*. The record before us establishes that the same drafting procedures involving the sentencing entry that occurred in *Roberts* took place in the instant matter. Judge Stuard admitted in an affidavit that he enlisted prosecutorial assistance in preparing and drafting appellant's sentencing entry but failed to include defense counsel in the process. The ex parte collaboration between Judge Stuard and the prosecution to prepare the court's sentencing opinion was "wholly inconsistent" with the ethical constraints of Canon 3(B)(7) and DR 7–110(B). *Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, at ¶ 161. Based on the Supreme Court of Ohio's holding in *Roberts*, appellant is entitled to the same relief afforded to his co-defendant. Thus, the trial judge must personally review and evaluate the appropriateness of the death penalty, prepare an entirely new sentencing entry as required by R.C. 2929.03(F), and conduct whatever other proceedings are required by law and consistent with this opinion. Id. at ¶ 167.

{¶ 30} Appellant's first assignment of error has merit.

{¶ 31} In his second assignment of error, appellant alleges that the trial court erred by overruling his motions for a new trial and a sentencing hearing without conducting an evidentiary hearing.

{¶ 32} Because appellant is entitled to a remand for resentencing based on our disposition of his first assignment of error, his second assignment of error has

been rendered moot and thus will not be addressed in this opinion. See App.R. 12(A)(1)(c); *State v. Miller* (1996), 113 Ohio App.3d 606, 610, 681 N.E.2d 970.

{¶ 33} For the foregoing reasons, appellant's first assignment of error is well taken, and his second assignment of error is moot. The sentence of the Trumbull County Court of Common Pleas is vacated. This cause is remanded for resentencing and for proceedings consistent with this opinion. It is ordered that appellee is assessed the costs herein taxed. The court finds that there were reasonable grounds for this appeal.

Judgment accordingly.

CANNON, J., concurs separately.

TRAPP, P.J., concurs and concurs in Judge CANNON's opinion.

TIMOTHY P. CANNON, Judge, concurring.

{¶ 34} I concur in the majority judgment.

{¶ 35} My decision that the trial judge should conduct a new sentencing hearing is based, in large measure, upon the representations made to the Supreme Court of Ohio by the trial judge. More than one affidavit to disqualify the trial judge was filed in this case. In November 2006, the trial judge filed an affidavit in response, opposing disqualification. In that affidavit, the trial judge acknowledged doing the same thing in this case that he did in *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, wherein the trial judge was ordered to conduct a new sentencing hearing. In his affidavit, the trial judge stated the following to the Supreme Court of Ohio:

{¶ 36} "8. It is clear from the Ohio Supreme Court's opinion in *Roberts*, that the Court, even after concluding that my communications with the Assistant Prosecuting Attorneys in *Roberts* were not harmless error and were prejudicial error * * * did not want me to be removed from the *Roberts* case for the purpose of post-trial motion practice or for the purpose of re-sentencing Donna Roberts.

{¶ 37} "9. On the contrary, the Ohio Supreme Court vacated Roberts' death sentence and remanded the case to my court expressly ordering that I remain on the case. The Court said in paragraph 167 of its opinion:

{¶ 38} "[T]he trial court shall personally review and evaluate the evidence, weigh the aggravating circumstances against any relevant mitigating evidence, and determine anew the appropriateness of the death penalty as required by R.C. 2929.03. The trial court will then personally prepare an entirely new penalty opinion as required by R.C. 2929.03(F) and conduct whatever other proceedings are required by law and consistent with this opinion.

{¶ 39} " * * *

{¶ 40} "12.  If, as argued by Nathaniel Jackson in his motion to disqualify me, I engaged in the same conduct determined by the Ohio Supreme Court to be prejudicial error in *State v. Roberts*, then, and in that event, the same result should obtain in this companion case involving Nathaniel Jackson.  \* \* \* "

{¶ 41} Because he acknowledged doing the same thing that resulted in prejudicial error in the *Roberts* case, the trial judge conceded prejudicial error in Jackson's case.  And, by opposing disqualification, the trial judge implicitly represented that he could remain on the case for purposes of curing that error.  Given the circumstances, it would appear that the trial judge recognized that he would be required to do the same thing he was ordered to do in *Roberts*, regardless of the nature of the proceedings (whether postconviction or direct appeal), if he were permitted to remain on the case.

{¶ 42} The affidavit opposing disqualification was signed by the trial judge on November 21, 2006.  Chief Justice Moyer issued his ruling denying Jackson's motion to disqualify on November 29, 2006.  In assessing the trial judge's averments, the Chief Justice observed: "The judge states that he is prepared to reconsider the evidence and impose a new sentence in this case just as he has been ordered to do in the related Roberts case." *In re Disqualification of Stuard*, 113 Ohio St.3d 1236, 2006-Ohio-7233, 863 N.E.2d 636, at ¶ 4.  The Chief Justice's construction of the trial judge's affidavit lends further credence to the position I advance.  That is, by stating what he believed the trial judge was "prepared" to do, the Chief Justice seemed to anticipate that the trial judge would resentence Jackson just as he was ordered to do in *Roberts*, so long as he was allowed to remain on the case.

{¶ 43} Based on the holding in *Roberts* as well as the trial judge's affidavit opposing disqualification filed in this case, I therefore believe that the only proper disposition of this matter is for the trial court to proceed with resentencing.  For these reasons, I concur.

TRAPP, P.J., concurs.