[Cite as *State v. Jackson*, 2018-Ohio-2146.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| | | **CASE NO. 2017-T-0041** |
| - vs - | : | |
| NATHANIEL JACKSON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court of Common Pleas.
Case No. 2001 CR 00794.

Judgment: Affirmed.

*Dennis Watkins*, Trumbull County Prosecutor; *LuWayne Annos*, *Charles L. Morrow*, and *Ashleigh Musick*, Assistant Prosecutors, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481-1092 (For Plaintiff-Appellee).

*Timothy Young*, Ohio Public Defender, and *Randall L. Porter*, Assistant State Public Defender, 250 East Broad Street, Suite 1400, Columbus, OH 43215-9308 (For Defendant-Appellant).

TIMOTHY P. CANNON, J.,

{¶1}   Appellant, Nathaniel Jackson, appeals from the March 29, 2017 judgment entry of the Trumbull County Court of Common Pleas, denying his "Motion for Leave to File a Motion for a New Mitigation Trial." The trial court's judgment is affirmed.

{¶2}   Appellant was charged with various crimes, including aggravated murder, in 2001. The charges stemmed from the shooting death of Robert Fingerhut, who, at the

time of his death, was residing with his former wife, Donna Roberts. During the months prior to Mr. Fingerhut's murder, appellant and Roberts exchanged letters and phone calls in which they plotted for appellant to murder Mr. Fingerhut so that Roberts could collect life insurance proceeds in excess of $500,000.00. Roberts was also charged with murder for her role in Mr. Fingerhut's death.

{¶3} In November 2002, a jury found appellant guilty of two counts of aggravated murder, one count of aggravated burglary, and one count of aggravated robbery. The jury further found the state of Ohio had proved, beyond a reasonable doubt, two specifications of aggravating circumstances, to wit: that appellant committed the murder while committing, attempting to commit, or fleeing immediately after committing (1) aggravated burglary and (2) aggravated robbery. The jury concluded the state proved, beyond a reasonable doubt, that these aggravating circumstances outweighed any mitigating factors and returned a verdict recommending the death penalty. After independently weighing the aggravating circumstances and mitigating factors, the trial court imposed the sentence of death upon appellant.

{¶4} In a separate trial, Roberts was also found guilty of the aggravated murder of Mr. Fingerhut. The jury recommended the death penalty, which was imposed by the trial court. *See State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665.

{¶5} The Ohio Supreme Court affirmed appellant's convictions and death sentence. *State v. Jackson*, 107 Ohio St.3d 300, 2006-Ohio-1. Appellant's original and amended petitions for postconviction relief were denied by the trial court, and this court affirmed that judgment. *State v. Jackson*, 11th Dist. Trumbull No. 2004-T-0089, 2006-Ohio-2651.

2

**{¶6}** The Ohio Supreme Court vacated Roberts' death sentence due to improper ex parte communication between the prosecution and the trial court judge who had presided over both Roberts' and appellant's trials. The ex parte communication at issue was the use of the prosecutor in preparing the trial court's sentencing opinion without including defense counsel in the process. *Roberts*, *supra*, at ¶3. The Ohio Supreme Court remanded the case and instructed the trial court judge to personally review and evaluate whether the death penalty was appropriate. *Id.* at ¶167.

**{¶7}** Following the decision in *Roberts*, appellant filed a Civ.R. 60(B) motion for relief from the trial court's denial of his petition for postconviction relief. Appellant also filed an application to disqualify the trial court judge based on the judge's statement, during a hearing held in *Roberts*, that he had similarly relied on the prosecutor to prepare paperwork for him in other criminal cases. *In re Disqualification of Stuard*, 113 Ohio St.3d 1236, 2006-Ohio-7233, ¶1-3. The trial court judge responded to the application to disqualify, in which he acknowledged he had held similar ex parte communications with the prosecutors in both *Roberts* and *Jackson* before sentencing each of them to death. *Id.* at ¶4.

**{¶8}** The Chief Justice declined to disqualify the trial court judge from further participation in the matter. *Id.* at ¶10. The trial court subsequently denied appellant's Civ.R. 60(B) motion for relief from the denial of his postconviction petition, and this court affirmed that judgment. *State v. Jackson*, 11th Dist. Trumbull No. 2008-T-0024, 2010-Ohio-1270.

**{¶9}** In February 2008, appellant filed a "Motion for New Trial and/or Sentencing Hearing." The trial court denied this motion on the basis that there is no provision in the

3

Ohio Criminal Rules for a new sentencing hearing and the motion for new trial was untimely under Crim.R. 33(B). This court reversed the trial court's judgment because the same drafting procedures and ex parte communication involving the sentencing entry that had occurred in *Robert*s also took place in appellant's case. *State v. Jackson*, 190 Ohio App.3d 319, 2010-Ohio-5054 (11th Dist.). We held appellant was entitled to the same relief the Ohio Supreme Court had afforded Roberts. *Id.* at ¶29. Therefore, we did not order the trial court to conduct a new trial or sentencing hearing on remand, but the trial judge was ordered to "personally review and evaluate the appropriateness of the death penalty, prepare an entirely new sentencing entry as required by R.C. 2929.03(F), and conduct whatever other proceedings are required by law and consistent with this opinion." *Id.*, citing *Roberts*, *supra*, at ¶167.

{¶10} On remand, the trial court again sentenced appellant to death and filed a new sentencing opinion pursuant to R.C. 2929.03(F), which was affirmed by the Ohio Supreme Court. *State v. Jackson*, 149 Ohio St.3d 55, 2016-Ohio-5488.

{¶11} On January 13, 2017, appellant filed a "Motion for Leave to File a Motion for a New Mitigation Trial," which is the subject of the instant appeal. The arguments raised in this motion are based on a recent opinion of the United States Supreme Court, *Hurst v. Florida*, __ U.S. __, 136 S.Ct. 616 (2016). The *Hurst* Court held Florida's death penalty sentencing scheme violated the Sixth Amendment right to have a jury, not a judge, find the facts that support the decision to sentence a defendant to death. *Id.* at 622, applying *Ring v. Arizona*, 536 U.S. 584 (2002) and citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Appellant argues Ohio's death penalty sentencing scheme similarly violates the Sixth Amendment.

4

**{¶12}** Appellant asserted the trial court should grant him leave to file a delayed motion for a "new mitigation trial," under Crim.R. 33(A)(1), (4), and (5), because he "could not have anticipated" the holding in *Hurst* and, thus, "could not have filed his motion for new trial within fourteen days of the imposition of sentence." Appellee responded, in part, that Crim.R. 33 is not designed for the relief sought by appellant, i.e. a "new mitigation trial," and that the trial court should construe the motion as a petition for postconviction relief under R.C. 2953.21.

**{¶13}** The trial court denied the motion on March 29, 2017. The trial court found the motion was time barred, whether considered pursuant to Crim.R. 33 or R.C. 2953.21. The trial court further found the motion was substantively meritless and that Ohio's death penalty scheme is sufficiently different from what was invalidated in *Hurst* to survive constitutional scrutiny.

**{¶14}** Appellant filed a timely appeal and has raised one assignment of error for our review:

**{¶15}** "The trial court erred when it denied Jackson's motion for leave to file his motion for a new trial."

**{¶16}** Appellant first argues the trial court misconstrued the applicable law concerning whether his motion was timely filed. This argument raises an issue of law we review de novo. *See, e.g., State v. Fortune*, 11th Dist. Lake No. 2014-L-117, 2015-Ohio-4019, ¶16 (citation omitted).

**{¶17}** Appellant asserts his proposed "Motion for a New Mitigation Trial" is based on the provisions in Crim.R. 33(A), which governs motions for new trial. The timeliness of motions for new trial is governed by Crim.R. 33(B), which states:

5

Application for a new trial shall be made by motion which, except for the cause of newly discovered evidence, shall be filed within fourteen days after the verdict was rendered, or the decision of the court where a trial by jury has been waived, unless it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from filing his motion for a new trial, in which case the motion shall be filed within seven days from the order of the court finding that the defendant was unavoidably prevented from filing such motion within the time provided herein.

{¶18} The jury verdict in appellant's case was rendered in 2002; thus, the trial court was required to determine whether appellant was "unavoidably prevented" from filing his motion within fourteen days of the verdict. The trial court did not engage in this analysis. It instead stated: "[T]he Court finds the motion is untimely. Pursuant to Crim.R. 33(B), motions such as this must be filed within fourteen days after the verdict was rendered. Jackson is entirely outside this time frame. Therefore, the Court finds no basis on which to grant leave to file a request under Crim.R. 33."

{¶19} We agree with appellant that the trial court did not engage in the proper analysis regarding the timeliness of a delayed motion for new trial, pursuant to Crim.R. 33(B). *See State v. Trimble*, 11th Dist. Trumbull No. 2013-P-0088, 2015-Ohio-942, ¶18 (without a determination of whether appellant was "unavoidably prevented," this court is left with an insufficient record to review).

{¶20} We conclude, however, that this error was harmless, as the basis for appellant's motion—to wit, an alleged constitutional violation that occurred during the sentencing proceedings—is not appropriately raised in a Crim.R. 33 motion for new trial.

{¶21} In *Davie*, this court held "there is no provision in the Ohio Criminal Rules that provides for a new sentencing hearing." *State v. Davie*, 11th Dist. Trumbull No. 2007-T-0069, 2007-Ohio-6940, ¶8. Appellant argues this court subsequently ruled otherwise

6

with respect to the propriety of seeking sentencing relief in a motion for new trial, citing a previous opinion in his own case: *Jackson, supra*, 2010-Ohio-5054.

**{¶22}** In February 2008, appellant filed a "Motion for New Trial and/or Sentencing Hearing." The trial court denied this motion because the motion for new trial was untimely under Crim.R. 33(B) and because there is no provision in the Ohio Criminal Rules for a new sentencing hearing. This court reversed the trial court's judgment and remanded the case for the trial judge to "personally review and evaluate the appropriateness of the death penalty, prepare an entirely new sentencing entry as required by R.C. 2929.03(F), and conduct whatever other proceedings are required by law and consistent with this opinion." *Id.* at ¶29, citing *Roberts, supra*, at ¶167.

**{¶23}** This court neither relied on nor overruled *Davie* in that decision because the cases were distinguishable: our holding in *Jackson* was not based on the applicability of Crim.R. 33, but on the Ohio Supreme Court's holding in *Roberts. Id.* at ¶28-29. Because the trial court judge had admitted in an affidavit that the same drafting procedures and ex parte communication involving the sentencing entry that had occurred in *Robert*s also took place in appellant's case, appellant was entitled to the same relief the Ohio Supreme Court had afforded Roberts. *Id.* at ¶29; *see also id.* at ¶43 (Cannon, Trapp, JJ., concurring) ("Based on the holding in *Roberts* as well as the trial judge's affidavit opposing disqualification filed in this case, * * * the only proper disposition of this matter is for the trial court to proceed with resentencing.").

**{¶24}** Appellant's argument is not well taken; our holding in *Davie* was not compromised by our holding in *Jackson*. There is no provision in Crim.R. 33, or in any Ohio Criminal Rule, that provides for a new sentencing hearing. *Davie, supra*, at ¶8.

7

Appellant cannot escape the fact that Crim.R. 33 is not the proper vehicle to obtain the relief he seeks by captioning his motion, "Motion for New Mitigation Trial," when it is, in fact, a motion for a new sentencing hearing.

{¶25} We further note that, even if Crim.R. 33 was the proper vehicle, appellant could not succeed on his motion for leave to file a delayed motion for new trial. Appellant argues he was "unavoidably prevented" from filing a timely motion because the basis for his motion, *Hurst v. Florida*, was decided nearly 14 years after he was sentenced to death. Appellant was capable, however, of raising the same argument prior to *Hurst* by relying on *Apprendi v. New Jersey* and *Ring v. Arizona*, both of which were decided prior to his sentence. *See State v. Roberts*, 150 Ohio St.3d 47, 2017-Ohio-2998, ¶84; *State v. Mundt*, 7th Dist. Noble No. 17 NO 0446, 2017-Ohio-7771, ¶9. Thus, appellant was not "unavoidably prevented" from filing a timely motion for new trial on the basis that Ohio's death penalty sentencing scheme allegedly violates the Sixth Amendment.

{¶26} After finding appellant's motion untimely under Crim.R. 33, the trial court construed the motion as a petition for postconviction relief, pursuant to R.C. 2953.21. "[W]here a criminal defendant, subsequent to his or her direct appeal, files a motion seeking vacation or correction of his or her sentence on the basis that his or her constitutional rights have been violated, such a motion is a petition for postconviction relief as defined in R.C. 2953.21." *State v. Reynolds*, 79 Ohio St.3d 158, 160 (1997); *see also Davie*, *supra*, at ¶9, quoting *State v. Foti*, 11th Dist. Lake No. 2006-L-138, 2007-Ohio-887, ¶12 ("'a criminal defendant who files a motion to vacate or correct his or her sentence on the ground that his or her constitutional rights have been violated necessarily embraces the postconviction relief statutes'").

8

**{¶27}** The postconviction relief statutes provide, in relevant part:

> Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief.

R.C. 2953.21(A)(1)(a); *see also* R.C. 2953.21(A)(3) ("a person who has been sentenced to death may ask the court to render void or voidable * * * the sentence of death").

**{¶28}** At the time appellant was convicted and sentenced to death, a petition for postconviction relief was timely when it was filed no later than 180 days after the trial transcript was filed with the Ohio Supreme Court. *See* former R.C. 2953.21(A)(2) (the current version of the statute provides for 365 days). A convicted offender may file an untimely or a successive petition for postconviction relief when, as is relevant here, both of the following apply:

> (a) * * * The United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.
>
> (b) The petitioner shows by clear and convincing evidence that, * * * but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

R.C. 2953.23(A)(1).

**{¶29}** Here, the trial court stated: "In addition, if the Court were to construe Jackson's motion as a post-conviction relief request pursuant to R.C. 2953.21, the Court finds no basis on which to grant such a request. The Court finds such a post-conviction request would be time barred as the request was filed well beyond the 180-day statutory period."

9

**{¶30}** Again, the trial court did not engage in the proper analysis regarding the timeliness of the motion, even when construed as a petition for postconviction relief, because it did not review the exceptions outlined in R.C. 2953.23(A). We again conclude, however, that this error was harmless.

**{¶31}** First, appellant has not raised this error on appeal, instead insisting his motion was not a petition for postconviction relief and should not be construed as such. Because he has repeatedly emphasized before the trial court and on appeal that his motion was only intended to be considered a Crim.R. 33 motion for new trial, we agree to proceed on that basis. *See State v. Bush*, 96 Ohio St.3d 235, 2002-Ohio-3993.

**{¶32}** We further recognize, however, that appellant's insistence in this regard appears to be an effort to avoid the retroactivity requirement found in R.C. 2953.23(A)(1)(a). In other words, appellant's motion could only be successful, when construed as a petition for postconviction relief, if *Hurst v. Florida* recognized a new federal right that applies retroactively to persons in appellant's situation.

**{¶33}** A new rule issued by the United States Supreme Court is not retroactively applicable to cases on collateral review unless the United States Supreme Court expressly holds it to be retroactive. *Tyler v. Cain*, 533 U.S. 656, 663 (2001). "In *Tyler*, the Court acknowledged that, 'with the right combination of holdings,' it could 'make a rule retroactive over the course of two cases.'" *In re Zambrano*, 433 F.3d 886, 888 (D.C.Cir.2006), quoting *Tyler*, *supra*, at 666. This is only possible, however, "if the holdings in those cases necessarily dictate retroactivity of the new rule." *Tyler*, *supra*, at 666.

10

**{¶34}** Here, the United States Supreme Court did not expressly hold that *Hurst v. Florida* was to be applied retroactively to cases on collateral review. Additionally, the holding in *Hurst* was an application of *Ring*, which held that capital defendants "are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." *Ring*, *supra*, at 589; *see Hurst*, *supra*, at 622 ("In light of *Ring*, we hold that Hurst's sentence violates the Sixth Amendment.).)" And the United States Supreme Court has expressly held that *Ring* does *not* apply retroactively to cases on collateral review:

> The right to jury trial is fundamental to our system of criminal procedure, and States are bound to enforce the Sixth Amendment's guarantees as we interpret them. But it does not follow that, when a criminal defendant has had a full trial and one round of appeals in which the State faithfully applied the Constitution as we understood it at the time, he may nevertheless continue to litigate his claims indefinitely in hopes that we will one day have a change of heart. *Ring* announced a new procedural rule that does not apply retroactively to cases already final on direct review.

*Schriro v. Summerlin*, 542 U.S. 348, 358 (2004); *see also Holmes v. Neal*, 816 F.3d 949, 954 (7thCir.2016). Thus, the possibility of a "*Tyler* two-step" does not assist appellant in his attempt to retroactively apply the holding in *Hurst* to a collateral review of his sentence. *See Zambrano*, *supra*, at 888.

**{¶35}** Appellant's final issue presented for our review is whether the trial court erred in holding that Ohio's death penalty scheme does not violate a defendant's right to a jury trial, as presented in *Hurst*. In that regard, the trial court stated:

> Even if the Court did not find the requests were time barred as explained herein, the Court finds the reliance upon the *Hurst v. Florida*, 136 S. Ct. 616 (2016), decision is misplaced. '*Hurst*, *** does not invalidate Ohio's capital sentencing scheme because Ohio's scheme is materially different from Florida's.' *McKnight v. Bobby*, S.D. Ohio No. 2:09-CV-059, 2017 WL 631411, *3-4. In fact, the Ohio

mechanism provides an additional layer of protection not present in *Hurst*. Id. Indeed, 'Ohio's capital-sentencing scheme is unlike the laws at issue in *Ring* and *Hurst*.' *State v. Belton*, 2016-Ohio-1581, ¶59.

**{¶36}** Appellant asserts the trial court's reliance on *McKnight* and *Belton* is misplaced. It is well settled, however, that a reviewing "'court will not reach constitutional issues unless absolutely necessary.'" *State v. Ferry*, 11th Dist. Lake No. 2007-L-217, 2008-Ohio-2616, ¶19, quoting *State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, ¶9, citing *In re Miller*, 63 Ohio St.3d 99, 110 (1992) and *Hall China Co. v. Pub. Util. Comm.*, 50 Ohio St.2d 206, 210 (1977). Based on our determinations above, it is not absolutely necessary to address this constitutional issue, and we therefore decline to do so. We further note, however, that the Ohio Supreme Court recently rejected this argument in *State v. Mason*, Sup.Ct. No. 2017-0200, Slip Opn. No. 2018-Ohio-1462: "Ohio law requires the critical jury findings that were not required by the laws at issue in *Ring* and *Hurst*. *See* R.C. 2929.03(C)(2). Ohio's death-penalty scheme, therefore, does not violate the Sixth Amendment." *Id.* at ¶21.

**{¶37}** Appellant's sole assignment of error is without merit.

**{¶38}** The judgment of the Trumbull County Court of Common Pleas is hereby affirmed.


DIANE V. GRENDELL, J.,

COLLEEN MARY O'TOOLE, J.,

concur.